James J. Pisanelli, Bar No. 4027
Debra L. Spinelli, Bar No. 9695
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Facsimile: 702.214.2101
Email: jjp@pisanellibice.com
Email: dls@pisanellibice.com

Attorneys for Defendants Georges Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Merrick D. Okamoto, Said Ouissal, Simeon Salzman, and Fred Thiel, and Nominal Defendant Marathon Digital Holdings, Inc.

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROY STRASSMAN, Derivatively on Behalf of MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br>Plaintiff,<br>v.<br>FRED THIEL, GEORGES ANTOUN, KEVIN DENUCCIO, SARITA JAMES, JAY LEUPP, SAID OUISSAL, MERRICK D. OKAMOTO, and SIMEON SALZMAN,<br>Defendants,<br>-and-<br>MARATHON DIGITAL HOLDINGS, INC. (f/k/a MARATHON PATENT GROUP, INC.),<br>Nominal Defendant. | Case No.: 2:22-cv-00724-ART-EJY<br><br>**MOTION TO DISMISS** |

Defendants Georges Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Merrick D. Okamoto, Said Ouissal, Simeon Salzman, and Fred Thiel and Nominal Defendant Marathon Digital Holdings, Inc. (f/k/a Marathon Patent Group, Inc.) ("Marathon"), by and through their counsel of record, move to dismiss Plaintiff's Verified Shareholder Derivative Complaint, ECF

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

No. 1. This motion is made and based upon the attached Memorandum of Points and Authorities, the Declaration of Debra L. Spinelli and the exhibits attached to the Declaration, the pleadings and papers on file in this action, and any oral argument the Court may consider.

DATED this 11th day of May, 2022.

PISANELLI BICE PLLC

By: /s/ Debra L. Spinelli
James J. Pisanelli, Esq. Bar No. 4027
Debra L. Spinelli, Esq., Bar No. 9695
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

-and-

Jonathan D. Polkes
(*pro hac vice pending*)
Stephen A. Radin
(*pro hac vice pending*)
Caroline Hickey Zalka
(*pro hac vice pending*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Attorneys for Defendants Georges Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Merrick D. Okamoto, Said Ouissal, Simeon Salzman, and Fred Thiel and Nominal Defendant Marathon Digital Holdings, Inc.[1]

[1] Counsel has complied with LR IA 11-2.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .....1

STATEMENT OF FACTS .....3

- A. The Parties And Marathon's Board Of Directors .....4
- B. The Alleged Wrongdoing .....5

ARGUMENT .....6

I. PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL RULE 12(B)(6) AND COUNT IV IS ALSO NOT RIPE UNDER 12(B)(1) .....6

- A. Plaintiff's State Law Claims In Counts I, II, and III Fail Because Plaintiff Does Not Allege Intentional Misconduct, Fraud Or A Knowing Violation of Law .....6
- B. Plaintiff's Federal Law Contribution Claim In Count IV Fails Because The Claim Fails To Allege The Elements Of A Contribution Claim And Is Not Ripe .....8

II. PLAINTIFF LACKS STANDING TO SUE DERIVATIVELY ON BEHALF OF MARATHON UNDER FEDERAL RULE 23.1 BECAUSE PLAINTIFF HAS NOT ALLEGED A WRONGFUL REFUSAL OF DEMAND OR PARTICULARIZED FACTS EXCUSING DEMAND .....10

- A. A Derivative Plaintiff Must Allege A Wrongful Refusal Of Demand Or Particularized Facts Excusing Demand .....11
- B. Plaintiff Does Not Allege A Wrongful Refusal Of Demand .....13
- C. Plaintiff Does Not Allege Particularized Facts Excusing Demand .....13
  - 1. Demand Is Excused Only Under Narrow Circumstances, Requiring Specific, Particularized "Director-By-Director" Allegations That Overcome The Presumption That Directors Are Faithful To Their Fiduciary Duties .....13
  - 2. Plaintiff Has Not Alleged Particularized "Director-By-Director" Allegations Excusing Demand .....14
    - a. No Director Received A Material Personal Benefit From Alleged Misconduct .....14
    - b. No Director Faces A Substantial Likelihood Of Liability .....15
      - (i) Plaintiff's "Approved And/Or Permitted Wrongdoing" Allegations Fail .....16
      - (ii) Plaintiff's "Authorized And/Or Permitted False Statements To Be Disseminated" Allegations Fail .....18
      - (iii) Plaintiff's "Audit Committee" Allegations Fail .....19
      - (iv) Plaintiff's "Mr. Thiel Is A Defendant" Allegation Fails .....20
    - c. No Director Lacks Independence From Someone Who Received A Material Personal Benefit Or Faces A Substantial Likelihood of Liability .....20

CONCLUSION .....22

WEIL:\98614714\1\61707.0006

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allegiant Travel Co. S'holder Derivative Litig.*, 2:18-cv-01864, 2020 WL 7491073 (D. Nev. Dec. 18, 2020) ....16, 20

*In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011)....15

*Arduini v. Hart*, 774 F.3d 622 (9th Cir. 2014) ....20

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ....13, 14, 17, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....8

*Barenbaum v. Palleschi*, 1:19-cv-05913, 2020 WL 5819810 (S.D.N.Y. Sept. 30, 2020) ....3, 11, 21

*Baystar Cap. Mgmt., LLC v. Core Pac.-Yamaichi Int'l (H.K.) Ltd.*, CV-05-1091, 2005 WL 8157877 (C.D. Cal. Oct. 11, 2005)....9

*In re BEA Sys., Inc. Derivative Litig.*, C-06-04459, 2009 WL 815452 (N.D. Cal. Mar. 27, 2009) ....19

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) ....13, 21

*Behrmann v. Brandt*, C.A. No. 19-772, 2020 WL 4432536 (D. Del. July 31, 2020), *report and recommendation adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020) ....20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....8

*Bernard v. Theil*, No. 2:22-cv-00305 (D. Nev.)....1, 2, 3, 5

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009) ....10

*Bryceland v. Minogue*, 557 F. App'x 1 (1st Cir. 2014)....20

*Burks v. Lasker*, 441 U.S. 471 (1979)....12

*Canty v. Day*, 13 F. Supp. 3d 333 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015)....12, 19

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)....3

*In re China Auto. Sys. Inc. Derivative Litig.*,
C.A. No. 7145, 2013 WL 4672059 (Del. Ch. Aug. 30, 2013)....19

*Chur v. Eighth Jud. Dist. Ct.*,
458 P.3d 336 (Nev. 2020)....7

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)....14, 18

*City of Pontiac Police & Fire Ret. Sys. v. Caldwell*,
20-cv-06794, 2021 WL 2711750 (N.D. Cal. July 1, 2021)....17

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984)....11, 12

*Decker v. Clausen*,
Civ. A. Nos. 10,684, 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989)....21

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007)....14

*DiBattista v. Greco*,
CA 20-590, 2021 WL 327399 (D. Del. Jan. 31, 2021),
*report and recommendation adopted*, 2021 WL 5061720 (D. Del. Feb. 17, 2021)....9, 18

*In re Dow Chem. Co. Derivative Litig.*,
C.A. No. 4349, 2010 WL 66769 (Del. Ch. Jan. 11, 2010)....15

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 3d 1101 (D. Nev. 2020)....4

*In re Ferro Corp. Derivative Litig.*,
511 F.3d 611 (6th Cir. 2008)....19

*In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*,
42 F. Supp. 3d 473 (S.D.N.Y. 2012)....20

*Grobow v. Perot*,
539 A.2d 180 (Del. 1988)....15

*Guzman v. Johnson*,
483 P.3d 531 (Nev. 2021)....7, 13

*Henry v. Tyler*,
19-cv-02869, 2020 WL 3574637 (N.D. Cal. July 1, 2020)....17

*Jacobi v. Ergen*,
2:12-cv-2075, 2015 WL 1442223 (D. Nev. Mar. 30, 2015)....15

*Jacobi v. Ergen*,
2:12-cv-02075, 2016 WL 1089232 (D. Nev. Mar. 17, 2016)....10

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)....1, 11, 12

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*Kamen v. Kemper Fin. Servs., Inc.*,
939 F.2d 458 (7th Cir. 1991) ....................12

*La. Mun. Police Emps. Ret. Sys. v. Blankfein*,
08 Civ. 7605, 2009 WL 1422868 (S.D.N.Y. May 19, 2009)....................15, 20

*La. Mun. Police Emps. Ret. Sys. v. Wynn*,
829 F.3d 1048 (9th Cir. 2016) ....................4, 7, 11, 12, 16

*In re Lordstown Motors Corp. S'holder Derivative Litig.*,
1:21-cv-00604, 2022 WL 670940 (D. Del. Mar. 7, 2022)....................9

*Manheimer v. TruFusion Yoga, LLC*,
2:16-cv-2186, 2017 WL 1179951 (D. Nev. Mar. 28, 2017)....................13, 14, 16

*In re Massey Energy Co. Derivative & Class Action Litig.*,
C.A. No. 5430, 2011 WL 2176479 (Del. Ch. May 31, 2011) ....................12

*Pall v. KPMG, LLP*,
3:03-cv-00842, 2006 WL 2800064 (D. Conn. Sept. 29, 2006) ....................10

*Potter v. Hughes*,
546 F.3d 1051 (9th Cir. 2008) ....................11, 13

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) ....................13, 14

*Rattner v. Bidzos*,
Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ....................20

*Riley v. Chopra*,
No. 21-55518, 2022 WL 614450 (9th Cir. Mar. 2, 2022)....................14, 19

*Rosenbloom v. Pyott*,
765 F.3d 1137 (9th Cir. 2014) ....................10

*Ross v. Bernhard*,
396 U.S. 531 (1970)....................1

*Ryan v. Gursahaney*,
C.A. No. 9992, 2015 WL 1915911 (Del. Ch. Apr. 28, 2015),
*aff'd*, 128 A.3d 991 (Del. 2015)....................15

*Satey v. JPMorgan Chase & Co.*,
521 F.3d 1087 (9th Cir. 2008) ....................3

*Schlatre v. Marathon Digital Holdings, Inc.*,
No. 2:21-cv-2209 (D. Nev.)....................2, 5

*Seminaris v. Landa*,
662 A.2d 1350 (Del. Ch. 1995)....................21

*Shoen v. SAC Holding Corp.*,
137 P.3d 1171 (Nev. 2006)....................1, 2, 7, 11, 12, 13, 16, 15

*Solak v. Rochford*,
3:19-cv-00410, 2020 WL 1865982 (D. Nev. Apr. 14, 2020) ....................8

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*Solak v. Rochford*,
3:19-cv-00410, 2020 WL 5255129, at *2 (D. Nev. Sept. 3, 2020), *reconsideration granted on other grounds*, 2020 WL 7479637 (Dec. 18, 2020)....................13

*South v. Baker*,
62 A.3d 1 (Del. Ch. 2012)....................12, 20

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989)....................9

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985)....................9

*Towers v. Iger*,
912 F.3d 523 (9th Cir. 2018)....................11, 17, 18

*United Food & Com. Workers Union v. Zuckerberg*,
262 A.3d 1034 (Del. 2021)....................11, 14, 15, 20, 21

*Wood v. Baum*,
953 A.2d 136 (Del. 2008)....................17, 19, 20

*In re ZAGG Inc. S'holder Derivative Action*,
826 F.3d 1222 (10th Cir. 2016)....................7, 11, 16, 17, 19, 20

**Statutes and Rules**

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b)....................8

Securities Exchange Act of 1934 § 21D, 15 U.S.C. § 78u-4(f)....................8, 9

28 U.S.C. § 1367....................3

Fed. R. Civ. P. 11....................5

Fed. R. Civ. P. 12(b)(1)....................2, 6, 9

Fed. R. Civ. P. 12(b)(6)....................2, 6, 9, 10

Fed. R. Civ. P. 23.1....................2, 10

Fed. R. Evid. 201(b)....................4

NRS § 78.138(3)....................13

NRS § 78.138(7)....................2, 6, 7, 16

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**PRELIMINARY STATEMENT**

This is a shareholder derivative action on behalf of Nominal Defendant Marathon Digital Holdings, Inc. A derivative action is an action asserting "a *corporate* cause of action." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)); *see also Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179 (Nev. 2006) ("derivative suits . . . pursue litigation on the corporation's behalf").

Plaintiff Roy Strassman copies, word-for-word, the entirety of a complaint filed by Plaintiff Kimberly Bernard in *Bernard v. Theil*, Action No. 2:22-cv-00305-RFB-NJK (D. Nev.) (Ex. A), as follows:

| Bernard Compl. ¶ | Strassman Compl. ¶ | Bernard Compl. ¶ | Strassman Compl. ¶ | Bernard Compl. ¶ | Strassman Compl. ¶ | Bernard Compl. ¶ | Strassman Compl. ¶ |
|---|---|---|---|---|---|---|---|
| 1 | 1 | 24 | 24 | 47 | 47 | 70 | 73 |
| 2 | 2 | 25 | 25 | 48 | 48 | 71 | 74 |
| 3 | 3 | 26 | 26 | 49 | 49 | 72 | 75 |
| 4 | 4 | 27 | 27 | 50 | 50 | 73 | 76 |
| 5 | 5 | 28 | 28 | 51 | 51 | 74 | 77 |
| 6 | 6 | 29 | 29 | 52 | 52 | 75 | 78 |
| 7 | 7 | 30 | 30 | 53 | 55 | 76 | 79 |
| 8 | 8 | 31 | 31 | 54 | 56 | 77 | 80 |
| 9 | 9 | 32 | 32 | 55 | 57 | 78 | 81 |
| 10 | 10 | 33 | 33 | 56 | 58 | 79 | 82 |
| 11 | 11 | 34 | 34 | 57 | 59 | 80 | 83 |
| 12 | 12 | 35 | 35 | 58 | 60 | 81 | 84 |
| 13 | 13 | 36 | 36 | 59 | 61 | 82 | 85 |
| 14 | 14 | 37 | 37 | 60 | 63 | 83 | 86 |
| 15 | 15 | 38 | 38 | 61 | 64 | 84 | 87 |
| 16 | 16 | 39 | 39 | 62 | 65 | 85 | 88 |
| 17 | 17 | 40 | 40 | 63 | 66 | 86 | 89 |
| 18 | 18 | 41 | 41 | 64 | 67 | 87 | 90 |
| 19 | 19 | 42 | 42 | 65 | 68 | 88 | 91 |
| 20 | 20 | 43 | 43 | 66 | 69 | 89 | 92 |
| 21 | 21 | 44 | 44 | 67 | 70 | 90 | 93 |
| 22 | 22 | 45 | 45 | 68 | 71 | 91 | 94 |
| 23 | 23 | 46 | 46 | 69 | 72 | 92 | 95 |

There are just four changes: (1) the *Strassman* complaint double-spaces rather than single-spaces block quotes; (2) the *Strassman* complaint replaces female gender pronouns for the plaintiff with male gender pronouns; (3) the *Strassman* complaint corrects a typo (the *Bernard* complaint stated in paragraph 60 that "the Company Board was comprised of eight (6) members," while the *Strassman* complaint replaces "eight (6) members" with "six (6) members"); and (4) the

*Strassman* complaint skips paragraph numbers 53, 54, and 62 in its numbering of paragraphs, resulting in a 95 paragraph complaint rather than a 92 paragraph complaint.

The *Strassman* complaint, like the *Bernard* complaint, also copies 25 paragraphs of the complaint in a separate securities law action against Marathon that alleges that Marathon and three of its officers failed to disclose unidentified "potential regulatory violations." *Schlatre v. Marathon Digital Holdings, Inc.*, No. 2:21-cv-2209 (D. Nev.). Plaintiff alleges that the alleged failure to disclose "potential regulatory violations" that forms the basis of claims *against* Marathon in the securities law action also forms the basis of claims *on behalf of* Marathon in this action.

Defendants Georges Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Merrick D. Okamoto, Said Ouissal, Simeon Salzman, and Fred Thiel move to dismiss the claims asserted against them in this *Strassman* action on the same grounds on which they moved to dismiss the claims against them in the *Bernard* action on April 5, 2022 – a motion concerning which the plaintiff here was surely aware when she filed her copy of the *Bernard* complaint on May 5, 2022. The state law claims for breach of fiduciary duty (Count I), waste of corporate assets (Count II), and unjust enrichment (Count III) fail under Federal Rule of Civil Procedure 12(b)(6) because, under NRS § 78.138(7), a claim against a director or officer of a Nevada corporation requires "intentional misconduct, fraud or a knowing violation of law." No intentional misconduct, fraud, or knowing violation of law is alleged here. *See* Point I A. The federal claim for contribution (Count IV) fails under Rule 12(b)(6) because the elements of a contribution claim have not been pled. It also fails under Rule 12(b)(1) because the claim is wholly contingent on the outcome of the securities law action and thus is not ripe. *See* Point I B.

In the alternative, Nominal Defendant Marathon, the party in whose name plaintiff purports to act – joined by Defendants – moves to dismiss Counts I, II, III, and IV under Federal Rule of Civil Procedure 23.1 because plaintiff lacks standing to sue derivatively on behalf of Marathon. "[B]ecause the power to manage the corporation's affairs resides in the board of directors, a shareholder must, before filing suit, make a demand on the board." *Shoen*, 137 P.3d at 1179.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Plaintiff admits he has not made a demand. He contends that demand is excused. Under well settled law, it is not. "A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim upon which relief may be granted." *Id.* at 1180. "Whether a plaintiff has pleaded demand futility is a question of standing; without doing so, the plaintiff has no standing to proceed with the case, and it must be dismissed." *Barenbaum v. Palleschi*, 1:19-cv-05913, 2020 WL 5819810, at *7 (S.D.N.Y. Sept. 30, 2020) (Nevada law).

Plaintiff – a self-appointed shareholder of Marathon seeking an attorneys' fee award – cannot simply insist that he is better able to determine the wisdom of pursuing claims belonging to Marathon than Marathon's board of directors, elected by all of Marathon's share-holders. Plaintiff cannot usurp the right of Marathon's board to make a business judgment with respect to whether litigation on Marathon's behalf would serve the best interests of Marathon and all of Marathon's shareholders. This is particularly true here, where the overwhelming majority of Marathon's board consists of outside, non-management directors, and the claims plaintiff seeks to pursue on Marathon's behalf are diametrically opposed to the defense Marathon is mounting in the securities law action. *See* Point II.[*]

**STATEMENT OF FACTS**

The following facts are taken from plaintiff's complaint and documents to which the Court may take judicial notice. "The Supreme Court has instructed that courts ruling on a motion to dismiss 'must consider . . . matters of which a court may take judicial notice.'" *La.*

[*] Plaintiff Strassman, like the plaintiff in the *Bernard* action, alleges supplemental jurisdiction under 28 U.S.C. § 1367(a) as the jurisdictional basis for plaintiff's state law claims. Compl. ¶ 3. Neither plaintiff alleges his or her citizenship, so Marathon and defendants are unable to assess the presence or absence of diversity jurisdiction. If the Court decides that the federal law claim for contribution fails, either because the claim is unripe (Point I B) or because plaintiff lacks standing (Point II), no federal claim will remain. In that event, this Court "may" – but is not required to – "decline to exercise supplemental jurisdiction" if diversity jurisdiction is lacking. 28 U.S.C. § 1367(c)(3). Defendants request that the Court exercise supplemental jurisdiction and dismiss the entire action on the simple grounds briefed below for the sake of judicial economy and efficiency. *See, e.g.*, *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (affirming exercise of pendent jurisdiction because the "'pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988))).

*Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citation omitted). Federal Rule of Evidence 201(b) "permits a court to take judicial notice of an adjudicative fact 'not subject to reasonable dispute,' that is 'generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117 (D. Nev. 2020) (quoting Fed. R. Evid. 201(b)). Copies of all documents to which the Court may take judicial notice are attached as exhibits to the accompanying Declaration of Debra L. Spinelli.

**A. The Parties And Marathon's Board Of Directors**

Plaintiff Roy Strassman alleges that he owns stock in Nominal Defendant Marathon Digital Holdings, Inc., a Nevada corporation. ECF No. 1, Compl. ¶¶ 6-7.

Defendants George Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Said Ouissal, Fred Thiel, along with Douglas Mellinger, who is not named in plaintiff's complaint, constitute Marathon's board of directors. *Id*. ¶¶ 8-13, 63; Apr. 5, 2022 Form 8-K at 1 (Ex. B). Mr. Thiel has served as Marathon's chief executive officer since April 26, 2021 and as Marathon's chairman since January 1, 2022. *Id*. ¶ 14; Apr. 30, 2021 Form 8-K at 2 (Ex. C).

Plaintiff defines the "Relevant Period" as October 13, 2020 to the present and alleges that Messrs. Antoun, DeNuccio, Leupp, Ouissal, and Thiel and Ms. James served on Marathon's board "at all relevant times." Compl. ¶¶ 1, 8-13. In fact, only Mr. Thiel served as a director of Marathon in October 2020. Messrs. Antoun, DeNuccio, Leupp, Mellinger, Ouissal, and Ms. James all joined the board much later: Mr. DeNuccio on January 19, 2021, Messrs. Antoun and Leupp on May 20, 2021, Ms. James and Mr. Ouissal on August 6, 2021, and Mr. Mellinger on March 31, 2022. Jan. 22, 2021 Form 8-K at 1 (Ex. D); May 26, 2021 Form 8-K at 1 (Ex. E); Aug. 11, 2021 Form 8-K at 2 (Ex. F); Apr. 5, 2022 Form 8-K at 1 (Ex. B). Public filings with the SEC confirm that Messrs. Antoun, DeNuccio, Leupp, Mellinger, and Ouissal and Ms. James are all outside, non-employee, non-management directors. *Id*. Plaintiff does not allege otherwise.

Defendant Merrick D. Okamoto served as Marathon's chairman and as a member of Marathon's board of directors until December 31, 2021. Compl. ¶ 14.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Defendant Simeon Salzman served as Marathon's chief financial officer from October 19, 2020 until March 31, 2022, when he was appointed chief accounting officer. *Id.* ¶ 16; Apr. 5, 2022 Form 8-K at (Ex. B).

**B. The Alleged Wrongdoing**

As noted above, plaintiff's complaint is copied almost verbatim from the complaint in *Bernard v. Theil,* Action No. 2:22-cv-00305-RFB-NJK (D. Nev.). Both complaints include 25 paragraphs under the heading "Substantive Allegations." Bernard Compl. ¶¶ 28-52; Strassman Compl. ¶¶ 28-52. Every one of these 25 paragraphs is copied, virtually word-for-word, from the complaint in *Schlatre v. Marathon Digital Holdings, Inc.*, No. 2:21-cv-2209 (D. Nev.) (Ex. G ¶¶ 19-43), an action alleging violations of federal securities laws by Marathon and Messrs. Thiel, Okamoto, and Salzman. It is difficult to understand what basis plaintiff could possibly have under Rule 11 for copying his entire complaint from another complaint, much less from another complaint that copies its "Substantive Allegations" from yet another complaint.

Plaintiff alleges that Marathon is a digital asset technology company that mines cryptocurrencies. Compl. ¶ 28. Plaintiff alleges that Marathon announced the formation of a joint venture with Beowulf Energy LLC focused on delivering low cost power to Marathon's Bitcoin mining operations in October 2020, and, at the same time, entered into agreements with Beowulf to co-locate a Bitcoin mining data center in Hardin, Montana. *Id.* ¶¶ 29-30. Plaintiff alleges that Marathon's October 2020 press release announcing the venture (*id.* ¶¶ 30-34) was false and misleading because Marathon did not disclose that "Beowulf . . . implicated potential regulatory violations, including U.S. securities law violations," and that, "as a result, Beowulf subjected Marathon to a heightened risk of regulatory scrutiny" that "was "reasonably likely to have a material negative impact on the Company's business and commercial prospects." *Id.* ¶ 50. Plaintiff does not identify the "potential regulatory violations" that were "implicated." Plaintiff does not allege who at Marathon knew about "potential regulatory violations" in October 2020 or what was known. As noted above, Messrs. Antoun, DeNuccio, Leupp, and Ouissal and Ms. James were not even at Marathon in October 2020.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Plaintiff alleges that Marathon also failed to disclose the alleged "potential regulatory violations" in subsequent SEC filings, on November 12 and 13, 2020 for the third quarter of 2020 (*id*. ¶¶ 35-39), on March 16, 2021 for the fourth quarter of 2020 (*id*. ¶¶ 40-43), on May 10 and 12, 2021 for the first quarter of 2021 (*id*. ¶¶ 44-47), and on August 13, 2021 for the second quarter of 2021 (*id*. ¶¶ 48-49). Plaintiff does not allege when or what Messrs. Antoun, DeNuccio, Leupp, and Ouissal and Ms. James learned about these "potential regulatory violations" when they joined Marathon in January 2021 (Mr. DeNuccio), May 2021 (Messrs. Antoun and Leupp), August 2021 (Ms. James and Mr. Ouissal), and March 2022 (Mr. Mellinger).

The "truth" allegedly "emerge[d]" on November 15, 2021, when Marathon reported in its SEC filing for the third quarter of 2021 that "the Company and certain of its executives received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility," that "[w]e understand that the SEC may be investigating whether or not there may have been any violations of the federal securities law," and that "[w]e are cooperating with the SEC." *Id*. ¶ 51.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL RULE 12(B)(6) AND COUNT IV IS ALSO NOT RIPE UNDER 12(B)(1)

#### A. Plaintiff's State Law Claims In Counts I, II, and III Fail Because Plaintiff Does Not Allege Intentional Misconduct, Fraud Or A Knowing Violation of Law

Counts I, II, and III fail on a simple threshold ground. Plaintiff has not pled the most essential element of a state law claim against a director or officer of a Nevada corporation: "intentional misconduct, fraud or a knowing violation of law."

NRS § 78.138(7) could not be clearer:

> (7) [U]nless the articles of incorporation or an amendment thereto . . . provide for greater individual liability, *a director or officer is not individually liable to the corporation* or its stockholders or creditors for any damages as a result of any act or failure to act in his or her capacity as a director or officer *unless* . . .
>
> (b) It is proven that:
>
> (1) The director's or officer's act or failure to act constituted *a breach of his or her fiduciary duties as a director or officer*; and
>
> (2) The breach of those duties *involved intentional misconduct, fraud or a knowing violation of law*.

NRS § 78.138(7) (emphasis added). Marathon's articles of incorporation do not "provide for greater individual liability." Aug. 19, 2021 Form S-8, Ex. 3.1, Arts. of Incorporation (Ex. H).

The Nevada Supreme Court has repeatedly held that NRS § 78.138(7) means what it says. The Nevada Supreme Court stated in 2021 that "[a] shareholder who sues a corporate director individually for breach of fiduciary duty must, under NRS 78.138(7), . . . demonstrate that the alleged breach involved intentional misconduct, fraud, or a knowing violation of the law," and that "[t]he statute's language is straightforward and must be given effect." *Guzman v. Johnson*, 483 P.3d 531, 533, 537 (Nev. 2021). The Nevada Supreme Court stated in 2020 and again in 2021 that NRS § 78.138(7) is "the *sole avenue* to hold directors and officers individually liable for damages arising from official conduct." *Chur v. Eighth Jud. Dist. Ct.*, 458 P.3d 336, 340 (Nev. 2020), *quoted in Guzman*, 483 P.3d at 534 (emphasis added by the court in *Guzman*); *see also Shoen*, 137 P.3d at 1184 ("directors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law"). The Ninth and Tenth Circuits have held the same. *Wynn*, 829 F.3d at 1061 ("director liability . . . require[s] 'intentional misconduct, fraud or a knowing violation of law' on the part of the directors"); *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1230 (10th Cir. 2016) (directors "are not liable unless their actions constituted 'intentional misconduct, fraud or a knowing violation of law'").

Plaintiff does not begin to allege facts showing that any defendant in this action engaged in "intentional misconduct, fraud or a knowing violation of law." The words "intentional" and "fraud" do not appear anywhere in the complaint. The words "knowing and culpable" do appear (Compl. ¶¶ 19, 26), but only in completely conclusory fashion, with no fact or facts alleged even suggesting the "knowing" nature of any wrongful act by anyone. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Bell Atl.*, 550 U.S. at 557); *see also Solak v. Rochford*, 3:19-cv-00410, 2020 WL 1865982, at *2 (D. Nev.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Apr. 14, 2020) ("[w]hile Rule 8 does not require detailed factual allegations, it demands more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" (quoting *Iqbal*)).

Plaintiff, indeed, concedes that his complaint is not premised on "knowing" misconduct. Plaintiff alleges that defendants "*either knew or should have known* of the false and misleading statements that were issued on the Company's behalf" and that "the Director Defendants . . . participated in efforts to conceal or disguise those wrongs from the Company's stockholders *or* recklessly *and/or* with gross negligence disregarded the wrongs complained of herein." Compl. ¶¶ 64, 66 (emphasis added). Alternative pleadings of knowledge, recklessness, *or* negligence are insufficient to establish a claim requiring knowledge. An allegation that defendants "*either knew or should have known*" is not an allegation that defendants "*knew*." An allegation that defendants "*participated . . . or recklessly and/or with gross negligence*" is not an allegation of *intentional or knowing wrongdoing*.

Plaintiff's claims in Counts I, II, and III accordingly all fail as a matter of law.

**B. Plaintiff's Federal Law Contribution Claim In Count IV Fails Because The Claim Fails To Allege The Elements Of A Contribution Claim And Is Not Ripe**

Count IV, a federal claim for contribution under Sections 10(b) and 21D of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78u-4(f), fails on an equally simple ground: none of the conditions required to state the claim are alleged to have happened.

The claim requires that

- a "final judgment is entered" (*id.* § 78u-4(f)(2)(A));
- the trier of fact find a "knowing[] . . . violation of the securities laws" (*id.*);
- the party seeking contribution make "an additional payment" beyond its proportionate liability, *i.e.*, the "portion of the judgment that corresponds to the percentage of responsibility of that . . . person" (*id.* §§ 78u-4(f)(5)), 78u-4(2)(B)(i)); and
- the party from whom contribution is sought does not enter into a settlement at any time before final judgment, because settling defendants "shall be discharged from all claims for contribution brought by other persons" (*id.* § 78u-4(f)(7)(A)).

Plaintiff has not pled any of these elements of the claim. First, no final judgment has been entered. Second, no knowing violations of the securities laws have been found. Third, Marathon,

the party on whose behalf plaintiff seeks contribution, has made no payment, much less beyond proportionate liability. Fourth, a settlement at any time between now and final judgment may bar all claims for contribution.

Plaintiff's claim for contribution thus fails under Rule 12(b)(6) because the claim "does not meet the necessary pleading requirements under the statute." *Baystar Cap. Mgmt., LLC v. Core Pac.-Yamaichi Int'l (H.K.) Ltd.*, CV-05-1091, 2005 WL 8157877, at *5 (C.D. Cal. Oct. 11, 2005) (dismissing § 78u-4(f) claim). The claim also fails under Rule 12(b)(1) because the claim does not "demonstrate sufficient ripeness to establish a concrete case or controversy." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 579 (1985); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[w]hether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution," and, "[l]ike other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1)").

Many courts have dismissed § 78u-4(f) claims in the precise context presented here: a shareholder derivative action seeking contribution for payments that may or may not someday be made in a separate federal securities law action. *See, e.g.*, *In re Lordstown Motors Corp. S'holder Derivative Litig.*, 1:21-cv-00604, 2022 WL 670940, at *1 (D. Del. Mar. 7, 2022) ("[T]he shareholders' claim depends on a cascade of uncertain future events: that the [securities] action does not settle before judgment, barring contribution; that the court finds [the corporation] liable; and that the court also finds that the [corporate officers] 'knowingly committed' a securities violation. . . . Thus, this claim is not ripe."); *DiBattista v. Greco*, CA 20-590, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021) ("because Plaintiff is attempting to bring a contribution claim that is contingent upon a finding of liability in the related Securities Action, the 'injury (and availability of a contribution claim) depends upon the results in the related actions, making the contribution claim not ripe'" (citation omitted)), *report and recommendation adopted*, 2021 WL 5061720 (D. Del. Feb. 17, 2021); *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal. 2009) ("[a]s there is no final judgment in [the securities] case, the claim for contribution is not ripe and is hereby dismissed"); *Pall v. KPMG, LLP*, 3:03-cv-

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

00842, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) ("because the plaintiff is attempting to bring a contribution claim which is contingent upon a finding of liability in the related actions, the injury (and availability of a contribution claim) depends upon the results in the related actions, making the contribution claim not ripe").

Plaintiff's claim in Count IV accordingly fails as a matter of law.

## II. PLAINTIFF LACKS STANDING TO SUE DERIVATIVELY ON BEHALF OF MARATHON UNDER FEDERAL RULE 23.1 BECAUSE PLAINTIFF HAS NOT ALLEGED A WRONGFUL REFUSAL OF DEMAND OR PARTICULARIZED FACTS EXCUSING DEMAND

In the alternative, plaintiff's claims all fail because plaintiff lacks standing. Federal Rule of Civil Procedure 23.1 requires that a plaintiff in a stockholder derivative action "state *with particularity* . . . any effort by the plaintiff to obtain the desired action from the directors . . . and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3) (emphasis added). "This heightened pleading burden 'is . . . more onerous than that required to withstand a Rule 12(b)(6) motion.'" *Jacobi v. Ergen*, 2:12-cv-02075, 2016 WL 1089232, at *3 (D. Nev. Mar. 17, 2016) (citation omitted). "In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 n.9 (9th Cir. 2014) (citation omitted).

"Rule 23.1 supplies the pleading standard for assessing allegations of demand futility," but the substantive law that determines whether demand is excused because it is futile, as plaintiff alleges here, "is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Id.* at 1148. "Because Nevada is [the] state of incorporation, Nevada law governs whether the shareholders have adequately alleged demand futility." *Wynn*, 829 F.3d at 1058.

"Nevada, in turn, looks to Delaware law on shareholder demand futility." *Id.*; *see also ZAGG*, 826 F.3d at 1229 ("Nevada follows . . . landmark decisions of the Supreme Court of Delaware on demand futility"); *Shoen*, 137 P.3d at 1184 ("[t]he Delaware court's approach is a

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

well-reasoned method for analyzing demand futility and is highly applicable in the context of Nevada's corporations law"); *Barenbaum*, 2020 WL 5819810, at *7 ("Nevada has adopted the law of Delaware in connection with evaluating demand futility"). As demonstrated below, demand is excused under Delaware and thus Nevada law only where a plaintiff alleges particularized facts, on a director-by-director basis, showing that at least half of the directors serving on the board received a material personal benefit, face a substantial likelihood of liability, or lack independence from someone who received a material personal benefit or faces a substantial likelihood of liability. *United Food & Com. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021). Plaintiff has alleged no such facts. Demand therefore is not excused.

### A. A Derivative Plaintiff Must Allege A Wrongful Refusal Of Demand Or Particularized Facts Excusing Demand

"[T]he right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018) (citation omitted). This pre-suit demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'" *Kamen*, 500 U.S. at 101 (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984)). The requirement follows from "the general rule of American law . . . that the board of directors controls a corporation." *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008), *quoted in Wynn*, 829 F.3d at 1057. "[A] corporation's 'board of directors has full control over the affairs of the corporation.'" *Shoen*, 137 P.3d at 1178 (citation omitted). "The board's control includes and ought to include the decision whether to pursue litigation when the corporation may have suffered harm." *Wynn*, 829 F.3d at 1057.

Consistent with this basic principle of corporate governance, the demand requirement "'afford[s] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted

by not insisting on such right'" and "protect[s] the directors' prerogative to take over the litigation or to oppose it." *Kamen*, 500 U.S. at 96, 101 (quoting *Daily Income*, 464 U.S. at 533). "There may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue." *Burks v. Lasker*, 441 U.S. 471, 485 (1979). "Conscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury." *Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 462 (7th Cir. 1991).

"These interests are particularly relevant where, as here, a shareholder derivative action seeks recovery on the basis of the same allegations alleged against the company in a federal securities class action." *Canty v. Day*, 13 F. Supp. 3d 333, 343 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015). Where, as here, a plaintiff in a derivative action simply "copie[s] verbatim or with minimal conforming changes" allegations in a federal securities action, the "dramatic degree of overlap" between the securities action and the derivative action "heightens the importance of the demand requirement" (*id*. at 343 n.4) because pursuing derivative claims on behalf of a corporation during the pendency of related litigation against the corporation "may well compromise the corporation's position on the merits, thereby causing or exacerbating precisely the harm that the . . . plaintiff ostensibly seeks to remedy." *South v. Baker*, 62 A.3d 1, 25 (Del. Ch. 2012); *see also In re Massey Energy Co. Derivative & Class Action Litig.*, C.A. No. 5430, 2011 WL 2176479, at *2, *23 (Del. Ch. May 31, 2011) (describing "myriad of rational business reasons" why disinterested directors might determine not to pursue claims that "could expose the entity, and thereby indirectly its stockholders, to severe financial harm in the form of large judgments").

For all of these reasons, "strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors." *Potter*, 546 F.3d at 1058, *quoted in*, *e.g.*, *Solak v. Rochford*, 3:19-cv-00410, 2020 WL 5255129, at *2 (Sept. 3, 2020), *reconsideration granted on other grounds*, 2020 WL 7479637 (Dec. 18, 2020); *Manheimer v. TruFusion Yoga, LLC*, 2:16-cv-2186, 2017 WL 1179951, at *3 (D. Nev. Mar. 28, 2017).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**B. Plaintiff Does Not Allege A Wrongful Refusal Of Demand**

Plaintiff concedes that that he has not made a demand. Compl. ¶ 61. *A fortiori*, plaintiff has not alleged a wrongful refusal of a demand.

**C. Plaintiff Does Not Allege Particularized Facts Excusing Demand**

Plaintiff has also failed to allege particularized facts excusing demand.

**1. Demand Is Excused Only Under Narrow Circumstances, Requiring Specific, Particularized "Director-By-Director" Allegations That Overcome The Presumption That Directors Are Faithful To Their Fiduciary Duties**

"The key principle upon which this area of our jurisprudence is based is that the directors are entitled to a *presumption* that they were faithful to their fiduciary duties." *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (emphasis in original). Plaintiff must "rebut the presumption at the pleading stage." *Id*. at 1049; *see also Shoen*, 137 P.3d at 1178-79 ("[t]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company'" (citation omitted)); NRS § 78.138(3) (codifying the business judgment rule as follows: "Directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation."), *quoted in Shoen*, 137 P.3d at 1179 n.11, *and Guzman*, 483 P.3d at 536.

Delaware courts, until 2021, incorporated this presumption into two tests for determining whether demand is excused: an "*Aronson*" test for actions challenging director action, *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), and a "*Rales*" test for actions challenging board inaction, *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). In 2021, the Delaware Supreme Court in *Zuckerberg* merged *Aronson* and *Rales* into a single test to be applied in cases challenging either board action or inaction. *Zuckerberg* states as follows:

> [F]rom this point forward, courts should ask the following three questions on a director-by-director basis when evaluating allegations of demand futility:
>
> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of

> the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.
>
> If the answer to any of the questions is "yes" for at least half of the members of the demand board, then demand is excused as futile.

262 A.3d at 1059. *Zuckerberg* "is consistent with and enhances *Aronson*, *Rales*, and their progeny," which "remain good law." *Id.*

*Zuckerberg*, like *Aronson* and *Rales* before it, examines board conduct "director-by-director." *Id.* A plaintiff "must plead facts that show . . . what the directors knew and when" and "with specificity each director's involvement." *Riley v. Chopra*, No. 21-55518, 2022 WL 614450, at *2 (9th Cir. Mar. 2, 2022). "[F]acts *specific to each director*" are required. *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original); *see also Riley*, 2022 WL 614450, at *2 (plaintiff "must . . . allege with specificity *each director's involvement*" (emphasis added)); *Manheimer*, 2017 WL 1179951, at *4 ("'the court must be apprised of facts *specific to each director* from which it can conclude that *that particular director* could or could not be expected to fairly evaluate the claims of the shareholder plaintiff'" (emphasis added) (citation omitted)). The "'group' accusation mode of pleading demand futility" is not permitted. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 n.36 (Del. Ch. 2009).

**2. Plaintiff Has Not Alleged Particularized "Director-By-Director" Allegations Excusing Demand**

Plaintiff has failed to allege particularized facts demonstrating that demand is excused with respect to "at least half of the members of the demand board" (*Zuckerberg*, 262 A.3d at 1059) – in this case, at least four of the seven directors serving on Marathon's board on the date this action was filed. Compl. ¶ 63; Apr. 5, 2022 Form 8-K (Ex. B). Plaintiff's allegations are not particularized, are not "director-by-director," and do not satisfy any of the three criteria stated in *Zuckerberg*.

**a. No Director Received A Material Personal Benefit From Alleged Misconduct**

Plaintiff alleges that six of Marathon's seven directors "received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board." *Id.* ¶ 68. This allegation could be made with respect to any director of any publicly traded company and does not begin to excuse demand – and, here, six of the seven directors who serve on

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Marathon's board are outside, non-management, non-employee directors who are not alleged to receive anything beyond ordinary director compensation.

"It is well established that allegations that defendants 'are paid for their services as directors' do not excuse demand." *La. Mun. Police Emps. Ret. Sys. v. Blankfein*, 08 Civ. 7605, 2009 WL 1422868, at *8 (S.D.N.Y. May 19, 2009) (quoting *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988)), *quoted in In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 432 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011); *see also Ryan v. Gursahaney*, C.A. No. 9992, 2015 WL 1915911, at *8 & n.46 (Del. Ch. Apr. 28, 2015) ("'ordinary director compensation alone is not enough to show demand futility'" (citation omitted)), *aff'd*, 128 A.3d 991 (Del. 2015).

Only one member of Marathon's board is alleged to receive a personal benefit exceeding ordinary director fees, Mr. Thiel, who, as Marathon's chief executive officer, is alleged to "derive[] substantially all of his income from his employment" with Marathon. Compl. ¶¶ 69-70. Demand is not excused on this ground because "where a director is beholden to the company . . . [h]er interests are aligned with the company and presumably she is able to make decisions in the best interests of the company." *In re Dow Chem. Co. Derivative Litig.*, C.A. No. 4349, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010), *quoted in Am. Int'l Grp.*, 700 F. Supp. 2d at 434; *Jacobi v. Ergen*, 2:12-cv-2075, 2015 WL 1442223, at *6 (D. Nev. Mar. 30, 2015) ("the assumption that a director lacks independence based on his employment is not enough"; "[a]s numerous courts have recognized, '[i]f these allegations were sufficient to show lack of independence, every insider director would be disabled from considering a pre-suit demand'" (citation omitted)).

**b. No Director Faces A Substantial Likelihood Of Liability**

No member of Marathon's board faces *any* likelihood of liability, substantial or otherwise, because intentional misconduct, fraud or a knowing violation of law is required to establish director or officer liability under NRS § 78.138(7)(b), and, as demonstrated in Point I A above, plaintiffs have alleged no such thing. *See Wynn*, 829 F.3d at 1061-62 (demand not excused because, "[e]ven if the complaint can be read to allege with particularity that the

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

directors were negligent . . . , such would not be sufficient to establish a substantial likelihood of director liability, because Nevada law requires knowledge or intent before director liability attaches"); *ZAGG*, 826 F.3d at 1229 (demand not excused because "[t]he likelihood of liability is greatly reduced in Nevada by an 'exculpatory' statute that limits the personal liability of corporate directors"); *Shoen*, 137 P.3d at 1184 ("interestedness through potential liability is a difficult threshold to meet" because under § 78.138(7)(b) "directors and officers may only be found personally liable" for "intentional misconduct, fraud, or a knowing violation of the law").

Plaintiff alleges three potential grounds for liability: conclusory allegations, without the required director-by-director allegations, that six of Marathon's seven directors "approved and/or permitted the wrongs alleged herein to have occurred"; that six of Marathon's seven directors "authorized and/or permitted the false statements to be disseminated"; and that three of Marathon's seven directors who served on the board's audit committee "failed to cause the Company to prevent the issuance of false and misleading statements." Compl. ¶¶ 67-68, 76. Plaintiff also alleges, solely with respect to Mr. Thiel, that Mr. Thiel is a defendant in the federal securities law action. *Id*. ¶ 71. These allegations have been rejected in case after case – and separate and apart from NRS § 78.138(7)(b).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**(i) Plaintiff's "Approved And/Or Permitted Wrongdoing" Allegations Fail**

"Allegations of mere threats of liability through approval of the wrongdoing or other participation . . . do not show sufficient interestedness to excuse the demand requirement." *Shoen*, 137 P.3d at 1183, *quoted in In re Allegiant Travel Co. S'holder Derivative Litig.*, 2:18-cv-01864, 2020 WL 7491073, at *4 (D. Nev. Dec. 18, 2020); *see also Manheimer*, 2017 WL 1179951, at *5 ("mere approval or participation by directors in the alleged wrongful conduct is insufficient to establish futility"); *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors"); *Aronson*, 473 A.2d at 817 ("mere directorial approval of a transaction . . . is insufficient to excuse demand").

The alleged wrong is Marathon's alleged failure to disclose that the Beowulf

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

venture Marathon entered into in October 2020 "implicated potential regulatory violations," and, "as a result, Beowulf subjected Marathon to a heightened risk of regulatory scrutiny" that "was reasonably likely to have a material negative impact on the Company's business and commercial prospects." Compl. ¶ 50. The complaint does not allege what "potential regulatory violations" were "implicated" or how they were "implicated," much less how any of Marathon's directors would have known this alleged fact in October 2020.

Certainly, board members are not "expected to know the minutiae of SEC regulations"; "[c]orporations have lawyers and accountants for that purpose." *ZAGG*, 826 F.3d at 1234-35. And, even assuming, arguendo, that Marathon's lawyers or accountants knew of potential regulatory risks, courts "cannot assume that members of the Board had knowledge of the [wrongdoing] simply because other individuals at [the company] . . . knew." *Towers*, 912 F.3d at 530 (dismissing derivative complaint alleging board knowledge of a "conspiracy" known to "corporate officers" because plaintiff must "allege with particularity that information regarding the conspiracy was . . . transmitted to the Board"); *Henry v. Tyler*, 19-cv-02869, 2020 WL 3574637, at *6 (N.D. Cal. July 1, 2020) (dismissing derivative complaint because "the Ninth Circuit has rejected arguments that knowledge held by a company's officers may automatically be imputed to its directors"); *City of Pontiac Police & Fire Ret. Sys. v. Caldwell*, 20-cv-06794, 2021 WL 2711750, at *8 (N.D. Cal. July 1, 2021) (dismissing derivative complaint that "fails to identify any communications, meetings, or other particularized facts which show that anyone '*knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act'" (quoting *Towers*, 912 F.3d at 529)).

Here, moreover, of the seven directors serving on Marathon's board on the date this action was filed, the date plaintiff alleges demand is excused (Compl. ¶ 63), only one, Mr. Thiel, served on Marathon's board in October 2020, when Marathon supposedly learned that the Beowulf venture "implicated potential regulatory violations." Even if Mr. Thiel knew this in October 2020, which plaintiff does not allege, plaintiff nowhere alleges when or how Mr. DeNuccio learned this when he joined the board three months later, in January 2021; when or how Messrs. Antoun and Leupp learned this when they joined the board seven months later, in

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

May 2021; when and how Ms. James and Mr. Ouissal learned this when they joined the board ten months later, in August 2021; and when and how Mr. Mellinger learned this when he joined the board seventeen months later, in March 2022.

In short, plaintiff alleges that Marathon's directors all "approved and/or permitted" an alleged failure to disclose "potential regulatory issues" that began months before six of Marathon's seven directors even joined Marathon's board. But "the Complaint never clearly states that a majority of the Demand Board were actually provided with this information." *DiBattista*, 2021 WL 327399, at *12. "If what Plaintiff means to allege" is that Messrs. Antoun, DeNuccio, Leupp, Mellinger, Ouissal, and Thiel and Ms. James all "*were told about these facts* . . . , then [s]he needs to actually plead those facts *with particularity*" in order for demand to be excused – including "the 'who, what, when, where, and how.'" *Id*. (emphasis in original). "Plaintiff's allegations are not an example of pleading with particularity. Instead, they amount to pleading with ambiguity." *Id*. at *13. "'[I]nferential hopscotch does not comport with Rule 23.1's 'stringent requirements of factual particularity.''" *Towers*, 912 F.3d at 531 (citations omitted).

**(ii) Plaintiff's "Authorized And/Or Permitted False Statements To Be Disseminated" Allegations Fail**

To excuse demand based on the making of false or misleading statements, a plaintiff must allege "specific factual allegations" showing "sufficient board involvement in the preparation of the disclosures" and that directors "had knowledge that any disclosures or omissions were false or misleading." *Citigroup*, 964 A.2d at 134.

Plaintiff alleges nothing of the sort. Plaintiff alleges only that SEC filings "contained false statements and material omissions and that the director defendants [i.e., Marathon's directors other than Mr. Mellinger] reviewed the financial statements." *Id*. Again, plaintiffs do not "plead facts that show . . . what the directors knew and when" and "with specificity each director's involvement" in the disclosure process. *Riley*, 2022 WL 614450, at *2. Again, six of Marathon's seven directors were not even members of Marathon's board in October 2020, when plaintiff alleges Marathon first failed to disclose "potential regulatory issues."

Many decisions are in accord. "The Board's execution of . . . financial reports,

without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality." *Wood*, 953 A.2d at 142. "A mere statement that the defendants 'caused' the filing of the allegedly misleading financial statements with the SEC is not, without more, a particularized allegation of fact" and does not excuse demand. *In re China Auto. Sys. Inc. Derivative Litig.*, C.A. No. 7145, 2013 WL 4672059, at *8 (Del. Ch. Aug. 30, 2013); *see also ZAGG*, 826 F.3d at 1234 (demand not excused by allegation that directors "reviewed, approved, and signed [ZAGG's] filings with the SEC" because that allegation does not permit an inference that a misstatement in the filings "was knowing or intentional"); *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 621 (6th Cir. 2008) (demand not excused by allegation that directors "signed and approved . . . annual reports" because this "does not mean that they had actual knowledge of the accounting errors contained within the reports"); *Canty*, 13 F. Supp. 3d at 347 ("general allegations that the Director Defendants caused or allowed lululemon to issue certain statements . . . are the kind of allegations that courts often find insufficient for the purpose of excusing demand"); *In re BEA Sys., Inc. Derivative Litig.*, C-06-04459, 2009 WL 815452, at *4 (N.D. Cal. Mar. 27, 2009) ("boilerplate allegations based on the directors' . . . signing of financial statements . . . do not come close to meeting the particularity requirement of pleading demand excuse").

**(iii) Plaintiff's "Audit Committee" Allegations Fail**

Plaintiff's allegation that demand is excused because three of Marathon's seven directors served on the board's audit committee (Compl. ¶ 76) is also "contrary to well-settled Delaware law" (*Wood*, 953 A.2d at 142, *quoted in* ZAGG, 826 F.3d at 1234) – and also fails because three of seven is not "at least half of the members of the demand board," as required by *Zuckerberg*. "[N]umerous Delaware decisions make clear" that "an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem." *South*, 62 A.3d at 17, *quoted in* ZAGG, 826 F.3d at 1234; *see also Bryceland v. Minogue*, 557 F. App'x 1, 6 (1st Cir. 2014) (Souter, J., sitting by designation) ("membership on an audit committee is not taken, on its own, to imply directors' knowledge of or participation in

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

corporate wrongdoing"); *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d 473, 483 (S.D.N.Y. 2012) ("contention that membership on a standing committee is sufficient to establish a likelihood of liability is simply contrary to established law"); *La. Mun.*, 2009 WL 1422868, at *7 ("[n]umerous cases have held that board committee membership, without more, cannot establish demand futility").

**(iv) Plaintiff's "Mr. Thiel Is A Defendant" Allegation Fails**

Plaintiff's allegation that Mr. Thiel "is a defendant" in the securities law action and would not "expose him[self] to liability" (Compl. ¶¶ 71-72) fails because an allegation that directors "are named defendants" does not excuse demand. *Aronson*, 473 A.2d at 817. Indeed, "even if all . . . board members had been named as defendants . . . , that fact alone would be insufficient to show that demand would be futile." *Arduini v. Hart*, 774 F.3d 622, 632 (9th Cir. 2014).

*Zuckerberg* requires allegations demonstrating a "substantial likelihood of liability." 262 A.3d at 1059. "The existence of a related lawsuit, without more, does not indicate that Gallagher faced a substantial likelihood of liability." *Allegiant*, 2020 WL 7491073, at *8; *see also Behrmann v. Brandt*, C.A. No. 19-772, 2020 WL 4432536, at *6 (D. Del. July 31, 2020) (courts "reject[] the notion that the threat of liability in a related federal action would impair a board's ability to impartially consider a plaintiff's demand"), *report and recommendation adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020); *Rattner v. Bidzos*, Civ. A. 19700, 2003 WL 22284323, at *14 (Del. Ch. Sept. 30, 2003) (alleging that "certain of the Individual Defendants are defendants in . . . federal securities class action suits" is "insufficient to satisfy the demand excusal requirements"); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (demand not excused because "shareholders filed federal securities fraud claims against defendants"); *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) ("the suggestion that demand is excused because the directors . . . are defending related litigation is without merit").

**c. No Director Lacks Independence From Someone Who Received A Material Personal Benefit Or Faces A Substantial Likelihood of Liability**

Nevada law is clear: "Unless the Director to whom Plaintiff alleges others were

'beholden' had complete control over the other Directors' continued employment on the Board or their pay, or the Directors are personally connected (like being family members), 'beholden-ness' is not established and there is no demand futility." *Barenbaum*, 2020 WL 5819810, at *10. Even assuming, for the sake of argument, that Mr. Thiel's compensation or presence on Marathon's board in October 2020 excuses demand as to him (it doesn't, as explained above), plaintiff alleges nothing suggesting that Mr. Thiel has any control – much less "complete control" – over Messrs. Antoun, DeNuccio, Leupp, Mellinger, or Ouissal or Ms. James.

Instead, plaintiff alleges only that Messrs. Antoun and DeNuccio "have long-standing business and personal relationships with each other that preclude them from acting independently and in the best interests of the Company and the shareholders." Compl. ¶ 75. "Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam,* 845 A.2d at 1050. And, even if they did, personal or business relationships Messrs. Antoun and DeNuccio have *with each other* do nothing to show a lack of independence on the part of Messrs. Antoun and DeNuccio *with Mr. Thiel*.

Plaintiff has thus failed to allege what *Zuckerberg* requires: that at least four of the seven directors serving on Marathon's board received a material personal benefit, face a substantial likelihood of liability, or lack independence from someone who received a material personal benefit or faces a substantial likelihood of liability. Demand therefore is not excused.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**CONCLUSION**

For all of these reasons, plaintiff's complaint should be dismissed with prejudice.

Respectfully submitted,

DATED this 11th day of May, 2022.

PISANELLI BICE PLLC

By: /s/ Debra L. Spinelli
James J. Pisanelli, Esq., Bar No. 4027
Debra L. Spinelli, Esq., Bar No. 9695
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

-and-

Jonathan D. Polkes
(*pro hac vice pending*)
Stephen A. Radin
(*pro hac vice pending*)
Caroline Hickey Zalka
(*pro hac vice pending*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Attorneys for Defendants Georges Antoun, Kevin DeNuccio, Sarita James, Jay Leupp, Merrick D. Okamoto, Said Ouissal, Simeon Salzman, and Fred Thiel, and Nominal Defendant Marathon Digital Holdings, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC and that, on this 11th day of May 2022, I caused to be served via the Court's CM/ECF program true and correct copies of the above and foregoing **MOTION TO DISMISS** to all parties via electronic service.

/s/ Cinda Towne
An employee of PISANELLI BICE PLLC

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101